IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KERI MIGLIORETTO, | ) | Civil No.: 6:12-cv-01136-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Alan Stuart Graf
    Alan Stuart Graf P.C.
    316 Second Rd
    Summertown, TN 38483

        Attorney for Plaintiff


    S. Amanda Marshall, U.S. Attorney
    Adrian L. Brown, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Jordan D. Goddard
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Keri Miglioretto brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her application for Disability Income Benefits (DIB) under the Social Security Act (the

Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the

Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff filed her first application for disability benefits on March 15, 2005, alleging that

she had been disabled since May 16, 2004. After her application had been denied initially and

upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ Marilyn Mauer on July 31, 2006. On March 24, 2007, ALJ

Mauer filed a decision finding that Plaintiff was not disabled.

Plaintiff filed a second application for disability benefits on April 3, 2007, alleging that

she had been disabled since May 16, 2004, because of fibromyalgia, back pain, a shoulder injury,

and depression.

After this application had been denied initially and upon reconsideration, Plaintiff timely

requested a hearing before an ALJ. A hearing was held before ALJ Charles Kunderer, who

issued a decision on June 10, 2010, finding that Plaintiff was not disabled. Plaintiff sought

review of that decision by the Appeals Council, which remanded the case with instructions that an ALJ reconsider the treating source opinions of Drs. Morris and Ames pursuant to 20 C.F.R. § 404.1527 and Social Security Rulings 96-2p and 96-5, explain the weight given to these doctors' opinions, and give further consideration to Plaintiff's residual functional capacity.

Following remand, a hearing was held before ALJ Mauer on January 5, 2011. On January 28, 2011, ALJ Mauer filed a decision finding that Plaintiff had not overcome a presumption of continuing non-disability arising from the March 24, 2007 decision finding that she was not disabled. ALJ Mauer's decision became the final decision of the Commissioner on April 20, 2012, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on June 30, 1972, and was 31 years old at the time of her alleged onset of disability in May, 2004. She has a high school education and work experience as a nanny, assistant manager in retail sales, convenience store clerk, customer service representative, and semi-conductor processor. Plaintiff has not worked since November 30, 2004.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### Medical Record

I will address relevant parts of the medical record in the discussion of the Parties' contentions below.

### Testimony

#### Plaintiff

#### 1st Hearing, July 31, 2006

Plaintiff testified as follows at the first hearing.

Plaintiff was married and had a 10-day old daughter. She last worked as a manufacturing technician at a semi-conductor manufacturing facility, where she was terminated because she was unable to meet the physical demands of the job. Plaintiff had been unable to sit, stand, and walk adequately, and had needed to take a break every 30 minutes. The work caused her intense pain. At the time of the hearing, Plaintiff could not work because during some days she was too tired and achy to move. She might have to call in sick and "a lot of jobs don't take that into consideration."

At the time of the hearing, Plaintiff could not sit for more than 20 minutes at a time. She was in constant pain caused by fibromyalgia, and carrying things worsened her condition.

Plaintiff felt "foggy" every day.  She lost her train of thought and sometimes forgot what she was doing, and could no longer read.

Plaintiff did "a little" housework every day "to stay mobile."  She might do dishes one day, do laundry the next, and vacuum another day.  Plaintiff spent a lot of time lying down, resting, sitting, or working on exercises.  She could sit for a maximum of 20 minutes, and could walk for about 30 minutes at a time.  Picking up a load of laundry is painful for her.  Plaintiff's family helped her care for her child.

Plaintiff played billiards in a pool league for a few hours one night per week.  She sometimes left those events because of her pain.

Plaintiff had problems with her left shoulder.  She tired easily, and her shoulder seemed "always tensed forward or up."  Plaintiff had tried physical therapy many times, and she exercised and stretched about three times per week.

## 2nd Hearing, April 13, 2010

Plaintiff testified as follows at the second hearing.

Plaintiff and her ex-husband lived together as a married couple.  They had a three and a half year old daughter.  Plaintiff had not been to see multiple doctors for some time because she had no medical insurance.  She did see Dr. Morris, who treated her for pain related to her fibromyalgia and degenerative disc disease.  Medication, physical therapy, and walking were the recommended treatments for fibromyalgia, and Plaintiff was regularly walking for 10 minute intervals.  She had discontinued physical therapy because she could not afford the treatment.

Fibromyalgia made it difficult for Plaintiff to do anything.  She needed to plan her daily activities, and needed to take breaks to sit down and rest on a recliner with her legs up.  Plaintiff

FINDINGS AND RECOMMENDATION - 6

experienced brain fog, felt lethargic, and carried out her activities slowly.  She experienced pain daily, at a level of 6 to 8 on a 10 point scale.

Plaintiff was 5'3" and weighed 237 pounds.  She suffered from depression and anxiety, and had tried to commit suicide in the past.  She took medication to keep depression and anxiety symptoms under control.

### 3. **3rd Hearing, January 5, 2011**

Plaintiff testified as follows at the hearing following remand.

Plaintiff had not been exercising regularly recently because of the difficulty of caring for her autistic four and a half year old daughter.  Plaintiff could not lift her daughter.  While Plaintiff's daughter was at school, Plaintiff did what she could.  This might include doing laundry, washing dishes, or just taking it easy until her daughter returned.  Plaintiff's ex-husband, who lived with Plaintiff, helped Plaintiff in the evenings.

### 4. **Testimony from Undated Agency Interview**

Plaintiff provided the following responses to an Agency representative's questions during an undated interview.

Plaintiff suffered from fibromyalgia, back pain, a shoulder injury, and depression.  She could not sit for more than 20 minutes at a time.  She experienced lower back pain which flared into her hips with tenseness, burning, and stabbing pain.  Plaintiff's toes fell asleep, and Plaintiff could not stand upright or walk for a few minutes after sitting.  Her pain could continue for days, and was rarely relieved.  Plaintiff could not perform any activities for more than 20 to 30 minutes at a time, and after being active, she needed to put her feet up, lie down, or take stronger medications.  She could walk about 5 blocks without resting.  Medications added to Plaintiff's fogginess and made it difficult for her to concentrate.

FINDINGS AND RECOMMENDATION - 7

5. **Plaintiff's Written Statements, June 29, 2007**

Plaintiff made the following statements in response to questions in an Agency document dated June 29, 2007.

Though Plaintiff carried out some activities during the day, she always rested or napped as necessary.  On some days, Plaintiff alternated between resting and stretching.  On Mondays, Plaintiff spent about half the day vacuuming her house.  On Tuesdays, she spent about an hour taking a bath.  Plaintiff did dishes and laundry as needed.

**Lay Witness Testimony**

Brian Miglioretto, Plaintiff's ex husband, made the following statements in a report dated July 2, 2007.

Plaintiff's activities had been increasingly limited during the previous three and a half years.  She carried out many of her activities, including mowing the lawn, camping, weeding, and "even the dishes" in stages; she could only cook one item at a time and could not coordinate a meal.  Plaintiff helped care for the family pets, but had difficulty remembering when they needed to be fed.  Plaintiff constantly supervised the couple's daughter**.**  She was always tired, and needed to take naps every day.

Plaintiff did daily household chores.  She was able to mow the small front lawn and occasionally washed the car, but was sore the next day after the latter of these activities. Plaintiff could drive, did "light errands" and helped with the shopping.  Mr. Miglioretto thought Plaintiff could still balance a checkbook, but thought she did not "demonstrate the ability to handle money matters."  She had reduced her camping trips to one per year, rarely fished, and provided "less and less help" with gardening and yard work.

Plaintiff maintained social contact with friends and family, but became more reclusive as

FINDINGS AND RECOMMENDATION - 8

she went into a "cycle of depression." She played billiards in a league once a week, but her performance was declining. Plaintiff could walk approximately one block, and then needed to rest from 5 minutes to a half hour before continuing. She had used a cane to help with walking in the past, but had not needed to use a cane for some time.

Plaintiff's physical abilities were decreasing, and physical therapy did not seem to help much.

### ALJ's Decision

At the first step of her disability analysis, the ALJ found that Plaintiff had engaged in substantial gainful activity from May 16, 2004, the alleged date of the onset of her disability, through November 30, 2004.

At the second step, the ALJ found that Plaintiff's severe impairments included fibromyalgia, degenerative disc disease of the lumbar spine, and obesity.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P, App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff's residual functional capacity had "not changed since a facially valid decision in March 2007" denying her application for disability benefits. As in her earlier decision, the ALJ found that Plaintiff retained the capacity to

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. She requires breaks at regular two-hour intervals with the option to change positions at will. Ms. Miglioretto can perform one to three step tasks consistent with SVP 2 work in the *DOT*.

FINDINGS AND RECOMMENDATION - 9

The ALJ found that Plaintiff's statements concerning the severity and limiting effects of her symptoms were not credible to the extent they were inconsistent with this assessment.

The ALJ next found that, because her residual functional capacity had not changed since an earlier facially valid finding that she was not disabled, Plaintiff had not overcome a presumption of continued non-disability.

Although this finding was dispositive as to the issue of disability raised by the current application, the ALJ continued the sequential disability analysis and provided alternative findings.  At step four, she found that Plaintiff could not perform any of her past relevant work.

Citing the Vocational Expert's testimony, at step five, the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy.  As examples of such jobs, the ALJ cited work as a patcher, food and beverage order clerk, and surveillance system monitor.  Based upon this finding, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time between the alleged onset of her disability on May 16, 2004, and the date of her decision.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

FINDINGS AND RECOMMENDATION - 10

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that she was not wholly credible, in rejecting the opinions of treating and examining physicians, in failing to provide germane reasons for rejecting lay witness testimony, and in finding that she had not overcome the presumption of continuing non-disability arising from an earlier decision finding that she was not disabled. She also contends that she is entitled to benefits based upon her application filed on April 7, 2005 because the ALJ effectively reopened and re-adjudicated that earlier application.

1. **Plaintiff's Credibiltiy**

As noted above, the ALJ found that Plaintiff's statements concerning the severity and limiting effects of her symptoms were not credible to the extent they were inconsistent with the

ALJ's RFC assessment.  Plaintiff contends that the ALJ failed to provide legally sufficient support for this finding.

**Standards for Evaluating Credibilty**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.   An ALJ may also consider such factors as a claimant's inconsistent statements concerning her symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms.  Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

FINDINGS AND RECOMMENDATION - 12

**Analysis**

Because there was no evidence of malingering in the record, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's description of her functional limitations was not wholly credible.

The ALJ provided several factors in support of her credibility assessment. She first cited Plaintiff's activities which she found inconsistent with the "degree of limitation" Plaintiff alleged. These included Plaintiff's continued ability to take camping trips and participate in a billiards league, which the ALJ concluded would have been "unreasonable, if not impossible" if Plaintiff's allegations were accurate. She also cited a State Agency consultant's assessment which noted that Plaintiff was able to do housework, mow the yard, and occasionally wash the car.

The ALJ next cited "the fact that [Plaintiff] essentially disregarded Dr. Morris's instructions to exercise and attempt weight loss, even though these activities are proven to improve fibromyalgia symptoms in the majority of individuals with that diagnosis, and her choice to disregard Dr. Ames's recommendation that she not pursue pregnancy because she risked exacerbating her pain complaints."

In support of her credibility determination, the ALJ further noted that Dr. Van Pett had declined consideration of surgical intervention because of Plaintiff's "exaggerated pain behaviors" and because Plaintiff had "misrepresented her treatment recommendations." She further found that Plaintiff lacked the motivation to return to work for reasons "entirely unrelated to her medical impairments based on her reluctance even to try Dr. Ames's suggestions with respect to this issue." The ALJ added that the "primary obstacle to working" that Plaintiff had

identified during the most recent hearing "was her role as the primary caretaker for her autistic four-year-old daughter because such responsibility was time consuming and demanding."

These are "clear and convincing" reasons for discounting Plaintiff's credibility.  A claimant's performance of activities that are inconsistent with the degree of impairment alleged are relevant in evaluating credibility.  E.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ here could reasonably conclude that Plaintiff alleged a degree of impairment that was inconsistent with a variety of her activities reported throughout the record, including performance of significant household chores and child care work cited by the ALJ.

Evidence of Plaintiff's "pain behavior" appeared  throughout the record, and was a valid basis for discounting Plaintiff's credibility.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (claimant's tendency to exaggerate is valid basis for discounting credibility).  The ALJ accurately cited a number of examples of exaggeration of pain in the medical record.

Plaintiff's failure to comply with conservative steps that treating physicians recommended for reducing her symptoms was also a valid basis for discounting her credibility. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing SSR 96-7p) (evidence that claimant has failed to follow prescribed treatment without good reasons valid basis for discounting credibility).  The ALJ here correctly noted that Plaintiff resisted Dr. Morris's advice concerning weight loss as part of the program for managing pain related to her fibromyalgia. Contrary to Plaintiff's assertion that the ALJ unfairly criticized her inability to lose weight, an undertaking that frustrates many individuals, the ALJ cited Plaintiff's failure to attempt to lose weight, not a failure to lose weight despite reasonable efforts.  The record supports the

conclusion that Plaintiff did not follow  recommendations that she attempt to lose weight, even though her doctor provided information about low-cost weight loss programs.

Finally, the ALJ's assertion that Plaintiff displayed poor motivation to return to work is supported by the record, and supported the credibility determination.  See, e.g., Tommassetti, 533 F.3d 1040 (claimant's lack of motivation to attempt return to work relevant in assessing credibility).  The ALJ noted that Dr. Ames, a treating physician, opined that, though Plaintiff could not return to her prior work, she demonstrated a "low motivation to return to any type of work . . . ."  The ALJ's conclusion that Plaintiff had little interest in returning to work because it would interfere with her child care responsibilities is supported by evidence in the record, and also supported the credibility determination.

The ALJ provided clear and convincing reasons for concluding that Plaintiff was not wholly credible, and her credibility determination here was supported by substantial evidence in the record.  It should therefore be upheld.  E.g., Carmickle, 533 F.3d at 1162 (ALJ's credibility determination must be upheld if supported by substantial evidence).

## 2. **Rejection of Opinions of Treating and Examining Physicians**

Plaintiff contends that the ALJ failed to properly assess the opinions of three treating doctors and an examining psychologist.

## **Evaluating Medical Opinion**

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons supported by substantial evidence in the record for rejecting a treating physician's uncontroverted opinions.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  An ALJ

must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

**Analysis**

**Dr. Ames and Dr. Morris**

Dr. Stephen Ames was Plaintiff's treating physician from March, 2005 through February, 2010. In August, 2005, Dr. Ames opined that Plaintiff could not work because of continuing disc problems in the lumbar area. He also noted Plaintiff's fibromyalgia diagnosis.

In October, 2005, Dr Ames noted that Plaintiff had back spasms and opined that she could not sit, stand, or walk for long periods. He further opined that she had "total disability from returning to her previous work" and was not able to work full-time because of lumbar disc problems. Dr. Ames opined that disc replacement surgery should be considered, but that Plaintiff would not likely be pain free or function as a productive worker even if she had surgery.

Dr. James Morris was Plaintiff's treating physician and pain specialist from December, 2007 through November, 2010. During a visit on December 5, 2007, Dr. Morris noted marked pain behavior with palpation and positive response to 16 or 18 fibromyalgia tender points. He opined that a residual functional capacity examination that another doctor had performed a short

time earlier was of little use in evaluating an individual suffering from fibromyalgia, and opined that Plaintiff's condition was permanently medically disabling.

In a residual functional assessment form dated December 17, 2007, Dr. Morris listed Plaintiff's diagnoses as including fibromyalgia, lumbar degenerative disc disease, depression, and morbid obesity. He opined that Plaintiff could work approximately 2 hours per day at a sedentary job, and that an attempt to work more than that would render Plaintiff incapable of working even that minimal amount.

Dr. Morris continued to opine that Plaintiff was disabled in subsequent medical reports. In a more detailed assessment dated March 24, 2010, Dr. Morris added sleep disturbance to the diagnoses he had previously listed, and opined that Plaintiff experienced waxing and waning chronic global pain, low back pain, and chronic fatigue. Dr. Morris opined that Plaintiff needed to pace herself carefully to maximize her stamina and prevent flares of pain. He opined that, during an 8-hour day, Plaintiff could stand/walk less than 2 hours, sit less than 3 hours, and occasionally lift less than 10 pounds.

As noted above, in its remand of a decision denying Plaintiff's application for disability benefits, the Appeals Council instructed the ALJ to reconsider the treating source opinions of Drs. Morris and Ames, explain the weight given to these doctors' opinions, and further consider Plaintiff's residual functional capacity. In the decision at issue here, the ALJ gave "very little weight" to the opinions of Drs. Ames and Morris. The ALJ asserted that these doctors' opinions were "inconsistent with objective findings in the overall record, including their own findings." She added that, because the "objective findings of all providers in the record do not support" their assessments, she assumed that Drs. Ames and Morris based their opinions "in large part on Ms. Miglioretto's subjective statements." The ALJ reiterated her finding that Plaintiff was not

credible, and found  "Dr. Ames's and Dr. Morris's reliance on her reporting to be inappropriate .

. . ."  She added that their reliance on Plaintiff's reports "undermines the reasonableness of their

opinions."

Notably, the ALJ did not question the accuracy of these doctors' fibromyalgia diagnosis,

but concluded that they overstated the severity of Plaintiff's limitations.  This is significant

because, as the Commissioner notes, a fibromyalgia diagnosis indicates that a claimant reports

pain that is not proportional to the degree of abnormality that can be objectively documented.

See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is diagnosed

"entirely on the basis of patients' reports of their pain and other symptoms," and absence of

"laboratory tests" for the disease).  Given that assessment of fibromyalgia is based on a patient's

description of her pain and limitations, an ALJ's assessment of a claimant's credibility is

particularly significant in evaluating medical opinions concerning the effects of that disease.

For the reasons discussed above, I conclude that the ALJ provided ample support for her

conclusion that Plaintiff's reports concerning the severity of her symptoms and limitations were

not wholly credible.  In addition, review of records of Drs. Ames and Morris supports the ALJ's

conclusion that their opinions concerning the severity of Plaintiff's pain and limitations were

based largely on Plaintiff's own subjective reports.  An ALJ who, like the ALJ here, has properly

discounted a claimant's credibility, may discount medical opinion that is based upon a claimant's

complaints as well.  See  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 1999); Morgan v.

Commissioner, 169 F.3d 595, 602 (9th Cir. 1999) (doctor's opinion premised on claimant's

accounts of symptoms and limitations may be disregarded if claimant's complaints properly

discounted).  In the present action, the ALJ's conclusions that Plaintiff was not credible and that

Plaintiff's treating doctors based their evaluation of Plaintiff's functional capacity on Plaintiff's

subjective complaints provided substantial support for her rejection of the opinions of Drs. Ames and Morris.

The ALJ's reference to inconsistencies in the medical records of Plaintiff's treating doctors and the absence of other objective evidence in the record supporting the severity of impairment assessed by Drs. Ames and Morris also supports rejection of these doctors' opinions concerning Plaintiff's residual functional capacity. In her summary of the medical evidence, the ALJ noted that Dr. Ames had earlier opined that Plaintiff would be a good candidate for vocational rehabilitation, had implied that Plaintiff could perform managerial type work, and had concluded that she "had low motivation to return to any type of work." TR at 16. She also discussed evidence supporting the conclusion that Plaintiff's condition had not deteriorated materially since that time, including Dr. Van Pett's conclusion that disc studies in 2007 showed little change from testing performed earlier. The ALJ noted that Dr. Van Pett had observed that Plaintiff's pain behavior was "out of proportion to any physical findings" and declined consideration of surgical intervention. The ALJ noted that a functional capacity assessment ordered by Dr. Morris showed that Plaintiff performed in a range consistent with light exertional level work, and that the evaluator reported discrepancies in Plaintiff's pain behavior and conduct consistent with symptom exaggeration. She also noted that Dr. Morris had indicated that Plaintiff exaggerated pain behaviors during his examination as well, found full range of motion in all areas, and found no neurological abnormalities.

These are clear and convincing reasons for discounting the opinions of Dr. Ames and Dr. Morris, and they are supported by substantial evidence in the medical record.


**Ron Lechnyr, Ph.D.**


FINDINGS AND RECOMMENDATION - 19

During a two month period in early 2008, Dr. Lechnyr treated Plaintiff with a cognitive behavioral therapy program designed to address chronic pain.  On February 7, 2008, after a number of therapy sessions, Dr. Lechnyr listed Plaintiff's diagnoses as including Generalized Anxiety Disorder, Adjustment Disorder with Mixed Emotional Features, Fibromyalgia Syndrome, Sleep Disorder, Vocational Limitations, and Lumbosacral Degenerative Disc Disease.  He opined that, though she was improving, Plaintiff continued to have significant problems in overall functioning and continued to be "disabled and unable to work."  On March 13, 2008, Dr. Lechnyr opined that, though Plaintiff had shown improved ability to manage her symptoms, she remained "disabled by her pain conditions."

The ALJ did not address Dr. Lechnyr's opinion as to the severity of Plaintiff's mental impairments directly and in detail.  Instead, she simply noted that Dr. Lechnyr's objective "mental status examinations were generally within normal limits," and proceeded to address Plaintiff's  mental impairments as part of her step two "severe impairment" assessment.  TR 13-14.

Plaintiff contends that the ALJ provided "no reason to reject Dr. Lechnyr's opinion" that she was disabled.   Plaintiff's Opening Memorandum at 23.  The Commissioner correctly acknowledges that "[t]he ALJ's rejection of Dr. Lechnyr's opinion" was "presented with less than ideal clarity . . . ."  Defendant's Responding Memorandum at 15.

Though a more detailed discussion of Dr. Lechnyr's opinion might have been useful, there is no doubt that the ALJ rejected his opinion, like that of Plaintiff's other treating doctors, largely because it was based upon Plaintiff's allegations which the ALJ found were not credible.  The ALJ thoroughly addressed Plaintiff's mental condition in her step two assessment, and her conclusion that Plaintiff did not have a "severe" mental impairment is supported by that analysis.

FINDINGS AND RECOMMENDATION - 20

Because Plaintiff's "mental status examinations" were generally within the normal range, her pain complaints were a matter of credibility, not an issue of mental impairment.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (pain is subjective; depends on claimant's credibility); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (pain is subjective phenomenon).

Plaintiff contends that the ALJ erred because Dr. Lechnyr supported his opinion that she was disabled with "various psychological tests," including the Burns Depression Checklist, the Burns Anxiety Inventory, and the Pain Catastrophizing Scale.  Plaintiff's Opening Memorandum at 21, 22; TR 516-518.  However, as the Commissioner notes, these tests record an individual's subjective self-reports.  A doctor's opinion that is based upon a claimant's subjective complaints merits the same weight as a claimant's own credibility.  Tonapetyan, 242 F3d at 1149.  The ALJ rejected medical opinions that Plaintiff was disabled, including the opinion of Dr. Lechnyr, on the grounds that they were based upon Plaintiff's own unreliable allegations.  Given the nature of the testing in question, and the generally normal results of Plaintiff's mental status examinations, her reasons for discounting Dr. Lehcnyr's opinion were adequate.

**Dr. Ryan Scott**

Dr. Scott evaluated Plaintiff's mental condition at the request of the Agency.  Based on a psychological evaluation conducted on September 18, 2007, Dr. Scott reported that Plaintiff "endorse[d] numerous symptoms consistent with major depressive disorder."  He opined that, though depression "may cause some difficulty with concentration," Plaintiff's symptoms "would not likely bar her from regular employment."

Dr. Scott also noted that Plaintiff reported panic attacks, and said that she had experienced such an attack on the day of that evaluation.  Dr. Scott opined that "[h]aving a panic

attack at work would likely interfere with her ability to do work tasks and may also be a distraction to other workers." TR 426. He added that it was "unclear how frequently these attacks occur."

The ALJ noted that Dr. Scott had found that Plaintiff's depression might cause some difficulty with concentration, but would not present an obstacle to employment. She added that, "[b]ased solely on her self-reports, Dr. Scott also believed Ms. Miglioretto's panic attacks would be distracting and would interfere with task completion." TR 13.

Given his uncertainty as to the frequency of panic attacks Plaintiff may have experienced, the extent to which Dr. Scott thought Plaintiff's anxiety might interfere with Plaintiff's employment is uncertain. In any event, the ALJ's observation that Dr. Scott's concern about the possible effects of panic attacks was based upon Plaintiff's "self-reports" was accurate, and the ALJ's credibility assessment provided an adequate basis for rejecting any suggestion that Plaintiff would experience panic attacks that would interfere with her ability to work. The ALJ amply supported her conclusion that the record established that anxiety would cause Plaintiff no more than "mild difficulty with maintaining her concentration, persistence, and pace," and she provided sufficient reasons for discounting Dr. Scott's opinion as to the possibility that panic attacks would interfere with her ability to work.

### 3. **Rejection of Lay Witness Testimony**

As noted above, Brian Miglioretto, Plaintiff's ex-husband, submitted a third-party witness statement in 2007 describing Plaintiff's activities and limitations. Mr. Miglioretto's testimony is summarized above, and will not be repeated here. In her summary of his statements, the ALJ noted that Mr. Miglioretto supported Plaintiff's allegations, reported that

Plaintiff's functional capacity was diminishing over time, and opined that Plaintiff would have difficulty following complex instructions.  TR 15.

The parties differ sharply as to the ALJ's consideration of Mr. Miglioretto's statements: Plaintiff contends that the ALJ provided no reasons for discrediting Mr. Miglioretto's testimony, while the Commissioner contends that the ALJ instead "accepted Mr. Miglioretto's statement and accommodated it in the residual functional capacity finding (Tr. 18)."  A careful reading of the ALJ's opinion supports neither of these positions: Though the ALJ did not refer to Mr. Miglioretto by name, she found that "the subjective statements and allegations of . . . third-party witnesses are not credibly supported by the weight of the evidence to the extent inconsistent" with the ALJ's RFC assessment.

An ALJ must provide "germane" reasons for rejecting lay witness testimony.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012).  Though a more thorough and direct assessment of Mr. Miglioretto's statements would have been useful, under the particular circumstances of this case, the ALJ minimally satisfied that requirement for two reasons.  First, where a third party witness testifies to the same limits alleged by the claimant, and the claimant's testimony is properly discounted, the reasons for discrediting the claimant's testimony also apply to the third party witness's testimony.  <u>Molina v. Asture</u>, 679 F.3d 1109, 1122 (9th Cir. 2012); <u>Valentine v. Commissioner</u>, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ has properly discounted claimant's credibility, failure to reassess third party witness statement as to same limitations not error).  Here, Mr. Miglioretto's description of Plaintiff's functional limitations largely reiterated Plaintiff's own description of her functional capacity, and the ALJ provided adequate reasons for discounting Plaintiff's credibility.  Second, any error in evaluating lay witness testimony is harmless if that testimony "is contradicted by more reliable medical evidence that the ALJ

credited." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1118-19 (9th Cir. 2012).  In her thorough review of

the medical record, the ALJ here both credited medical evidence that was inconsistent with Mr.

Miglioretto's statements, and provided sufficient reasons for concluding that the evidence on

which she relied was reliable.

4. **<u>Chavez and the Presumption of Continuing Non-Disability</u>**

In <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988), the court observed that "the

principles of res judicata apply to administrative decisions, although the doctrine is applied less

rigidly to administrative proceedings than to judicial proceedings."  Under these principles, an

earlier final decision finding that a claimant is not disabled creates a presumption that the

claimant continued to be able to work after that finding. <u>E.g.</u>, <u>Lester v. Chater</u>, 81 F.3d 821, 827

(9th Cir. 1995) (<u>citing</u> <u>Miller v. Heckler</u>, 770 F.2d 845, 848 (9th Cir. 1985)).  This presumption of

continued non-disability does not apply if there are "changed circumstances" such as an increase

in the severity of the claimant's impairments, a change in the claimant's age category, or the

existence of an impairment that was not considered in an earlier decision.  <u>Id.</u> (citations omitted).

Here, the ALJ found that, because her residual functional capacity had not changed since

an earlier facially valid final decision of the Commissioner in March, 2007, finding that she was

not disabled, Plaintiff had not overcome a presumption of continued non-disability.  The ALJ

noted that Plaintiff had not changed age categories, asserted that objective findings did not

reflect an increase in the severity of Plaintiff's impairments, and concluded that "[c]onsideration

of newly alleged impairments did not require alteration of the functional capacity found in

2007."

Plaintiff contends that the ALJ erred in applying the presumption of continuing non-

disability because her 2007 decision had found that Plaintiff's severe impairments included "a

pain disorder of the low back with no clear cut disc pathology" while her list of severe impairments in the 2010 decision instead included a "degenerative disc disease of the lower spine" and added obesity. She also contends that her anxiety disorder and depression have increased since the 2007 unfavorable final decision was issued.

The Commissioner contends that the ALJ properly applied the presumption of continuing non-disability because the changes in the description of her "severe" impairments did not alter the assessment of her residual functional capacity upon which her ability to perform work activities was based. She argues that the change in the description of her back impairment simply reflected a "clearer" diagnosis, and that the addition of the obesity resulted in no change in her physical capacity. The Commissioner correctly notes that "[n]either Plaintiff nor any medical professional has identified any limitations attributable to obesity," and argues that "common sense supports the ALJ determination that Plaintiff's sub-sedentary physical capacity would not be changed by obesity."

Based upon a careful review of the 2007 and 2010 decisions and the administrative record, I conclude that substantial evidence supports the ALJ's finding that there has been no showing that changed circumstances have removed a presumption of continuing non-disability arising from the 2007 decision. The ALJ's 2010  residual functional capacity assessment was supported by substantial evidence in the record. Given that this assessment did not differ from the earlier RFC assessment upon which a finding of non-disability was based, there is no reasonable basis for concluding that the record reflects "changed circumstances" within the meaning of Chavez and related decisions.

Though I have concluded that the presumption of continuing non-disability should apply, a contrary conclusion would not result in a reversal of the ALJ's decision. As noted above,

though the ALJ concluded that the presumption of continuing non-disability applied, in the alternative she also completed steps four and five of the sequential disability analysis.  Her alternative conclusions that Plaintiff could not perform her past relevant work but could perform other jobs that existed in substantial numbers in the national economy were supported by substantial evidence and did not reflect legal error.  Accordingly, the Commissioner's final decision should be upheld even if the presumption of continuing non-disability is not applied.

5. **Reopening Earlier Application**

Finally, Plaintiff contends that she is entitled to an award of benefits based upon her 2005 application because the ALJ reopened that application in her most recent decision.  Though the conclusion that the Commissioner's most recent decision should be affirmed makes it unnecessary to do so, I note my disagreement with this argument in order to create a full record for review.

An ALJ can effectively reopen a prior application by later considering, on the merits, whether a claimant was disabled during a period that has already been adjudicated.  See Lewis v. Apfel, 236 F.3d 503, 509-10 (9th Cir. 2001) (res judicata inapplicable where ALJ later considers on merits whether claimant was disabled during previously adjudicated period).  Here, the ALJ did refer to her earlier decision when deciding whether a presumption of continuing non-disability applied.  However, she did not reevaluate the earlier claim on the merits, and did not reopen the earlier claim.

## Conclusion

The Commissioner's decision denying Plaintiff's application should be AFFIRMED and this action should be dismissed with prejudice.

FINDINGS AND RECOMMENDATION - 26

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 29, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of August, 2013.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 27